Filed 6/14/23  P. v. Chaidez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080928 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD181666) |
| ROBERT C. CHAIDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Reversed and remanded with directions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, and Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

In 2006, Robert C. Chaidez was convicted of two counts of residential burglary of an inhabited dwelling (Pen. Code, §§ 459, 460;[1] counts 1 and 4), with a special allegation

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

that the homes were currently occupied (§ 667.5, subd. (c)(21)); one count of receiving stolen property (§ 496, subd. (a); count 2); and one count of unlawfully taking and driving a motor vehicle (Veh. Code, § 10851; count 5).[2]  He received a sentence of 60 years to life in prison.[3]

Beginning in 2014, Chaidez filed petitions for recall of sentence under sections 1170.18 and 1170.126.  After the trial court denied the petitions, we reversed and remanded the matter to determine whether Chaidez was entitled to relief.  (*People v. Chaidez* (Sept. 29, 2021, D078489) [nonpub. opn.]; *People v. Chaidez* (Nov. 30, 2021, D078168) [nonpub. opn.].)[4]  Instead of holding further proceedings as directed by this court, the trial court dismissed counts 2 and 5, citing its discretion under section 1385.  On appeal, Chaidez argues that this case should be remanded for further proceedings in accordance with this court's prior decisions.  The Attorney General agrees and concedes that this case should be remanded.  We also agree.  In addition, on remand the presiding judge of the superior court shall reassign the cause to a different trial judge to determine whether Chaidez is entitled to relief under sections 1170.18 and 1170.126.

---

[2]   The jury also found true special allegations that Chaidez had two prior serious felony convictions (§§ 667, subd. (a), 668, 1192.7, subd. (c)); two strike priors (§§ 667, subds. (b)-(i), 668, 1170.12); and three prior prison terms (§§ 667.5, subd. (b), 668).

[3]   Chaidez was sentenced to consecutive terms of 25 years to life for his two residential burglary convictions, and two five-year consecutive terms for each of the two serious felony priors under section 667, subdivision (a).  He also received a concurrent term of 25 years to life for the vehicle theft conviction, and a term of 25 years to life for possession of stolen property, which was stayed under section 654.

[4]   Our unpublished opinions are all citable under California Rules of Court, rule 8.1115(b)(2), because they are relevant to this criminal appeal and provide context for Chaidez's appellate claims.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

In our 2008 unpublished opinion (D049656) on Chaidez's direct appeal, we set forth the underlying facts of his convictions:

> Maston Mabe testified that on April 1, 2004, at approximately 3:00 a.m., he was at home on Aragon Drive, San Diego. His dog's barking alerted him that someone had entered his house without permission. The intruder had opened the kitchen window, and a step ladder was propped under the window. Mabe and his wife, Joanne Mabe, called the police. The intruder had taken money from Mabe's wallet; a pair of binoculars, Mabe's sheath knives, cell phone, food items and Joanne Mabe's bag and jewelry.

> Tiffany Morgan testified she went to bed at approximately midnight on April 1, 2004, at Nicholas Majersky's home on Filipo Street, San Diego. At approximately 5:00 a.m., she discovered that her purse containing her car keys, and her Honda Civic car were missing.

> Police Officer Abdiweli Heibeh testified that on April 2, 2004, he was on duty on Filipo Street, at approximately 3:55 a.m. Someone started a Honda Civic and accelerated in his direction, with the lights off. Heibeh turned on his light, drew his gun and yelled, "stop, police, stop." The driver did not stop. Heibeh broadcasted on his radio the vehicle's description and travel directions.

> Michael Briley testified that at approximately 4:00 a.m. that day, he heard a car drive up on the curb outside his house on Tower Street in La Mesa. He saw an individual run out of a Honda Civic and "slink" into a neighbor's yard. Briley called 911. The police arrived quickly, and caught a man who Briley stated " 'definitely' " matched the size and shape of the individual Briley had seen.

> Police Officer Bret Richards testified that at approximately 4:00 a.m. that day, he responded to a call to Tower Street, and saw the Honda Civic "parked oddly. It was two tires up on the grass, two tires in the street." Other police officers, including the canine unit, arrived and set up a police perimeter. After approximately an hour of seeing no other pedestrians in the vicinity, Richards saw Chaidez and ordered him to stop and show his hands. Chaidez ran. Another police officer drew his gun and also ordered Chaidez to show his hands. Richards tackled Chaidez and apprehended him in a yard. Richards searched Chaidez for weapons, and found in his pockets a crescent wrench, a screwdriver, a stocking cap, and a pair of

3

black gloves.  A knife was found on the sidewalk a couple of feet away from Chaidez.  Richards stated that in his experience the screwdriver and wrench were typical tools used to commit burglaries.  Richards found Tiffany Morgan's purse, keys and groceries inside the Honda Civic.

Police Officer Miseal Cerda testified he transported Chaidez to the jail.  A metal detector sounded as Chaidez passed through.  Chaidez was asked to empty his pockets and he pulled out a necklace marked "Joanne Mabe," a money clip and a small plastic bag.  Chaidez gave them to Cerda saying, "Make sure they go into my property."

At the end of the prosecution's case-in-chief, the court read to the jury the parties' stipulation regarding Chaidez's prior convictions.  [Footnote omitted.]  The same stipulation was reread to the jury during the bifurcated proceedings on his prior convictions.

Chaidez testified that on April 2, 2004, he was buying cigarettes at a gas station at the corner of 70th Street and El Cajon Boulevard.  He was wearing a leather coat because it was raining.  He saw a police patrol car; a police officer was staring at him.  The police were readily familiar with him because of his parole status, and they had routinely detained and harassed him.  Therefore, he decided to go to a 7–Eleven store to benefit from the store's video camera, which would provide evidence if the police decided to pull him over or "jump" him.

Chaidez left the store and the police car followed him.  It stopped about two houses ahead of him; the driver got out and disappeared.  Chaidez saw police cars all around him.  He stood against a fence for approximately 45 minutes watching the commotion the police were causing.  Chaidez saw the police coming towards him, and he jumped across three fences.  The last fence broke, he fell, and the police apprehended him.

Chaidez said he had on him a money clip, money, a "beanie" a screwdriver, and a wrench.  On direct examination, Chaidez's counsel asked him, "What about the knife?"  Chaidez answered, "Oh yeah, my knife. I don't know if I should cop to that.  Big old knife.  But, yeah, I do have a knife, a big old weed eater."  Chaidez testified the knife was not on him when he was apprehended:  "I had to throw it because I didn't know the extent of how these cops are going to treat me.  They started . . . to beat me, swinging on me.  I'm going to defend myself to the full extent.  [¶]  If I die, go to prison for life, I don't care.  I'll take somebody with me.  Oh, well, that's my mindset through that."  [Footnote omitted.]  Chaidez testified Police Officer Cerda planted Mabe's necklace on him after his arrest.

The defense presented evidence of other burglaries that also were committed in the same neighborhood late on April 1, 2004, and early on April 2, 2004. (*People v. Chaidez* (Sept. 10, 2008, D049656) [unpub. opn.].)

B.    *Procedural Background*

In our unpublished opinions filed in 2017, 2019, and 2021, we set forth the procedural history of Chaidez's resentencing petitions:

1.    *Chaidez's Section 1170.18 Petitions*

Regarding the petitions filed under section 1170.18, we previously recounted the following procedural history:

> Chaidez attempted to have his sentence reduced by filing a variety of motions and petitions. Relevant here, in December 2014, Chaidez filed a petition for resentencing under Proposition 47. In January 2016, the trial court denied the petition on the ground that the residential burglary convictions were ineligible for resentencing. On appeal, we concluded that the convictions for receiving stolen property (Pen. Code, § 496) and unlawfully taking and driving a motor vehicle (Veh. Code, § 10851) may be eligible for resentencing under Proposition 47. (*People v. Chaidez* (Oct. 23, 2017, D070609) [nonpub. opn.] (*Chaidez*).) However, we affirmed the court's order denying the petition for resentencing because Chaidez failed to allege that the property taken was worth less than $950 and failed to state facts sufficient to establish his entitlement to relief. (*Ibid*.) During the prior appeal, both sides acknowledged Chaidez could file another petition— supported by sufficient proof of value—to attempt to demonstrate his eligibility for relief under Proposition 47. [Footnote omitted.]
>
> Nearly three years after the prior appeal, Chaidez filed a second Proposition 47 petition to reduce his sentence as to his conviction for receiving stolen property. This time, he specifically alleged the value of the stolen necklace was less than $950, referencing the prosecution's itemized restitution statement submitted at the restitution hearing.
>
> In a November 2020 order, the trial court addressed other pending resentencing petitions filed by Chaidez, but it did not explicitly address or deny his Proposition 47 petition. Chaidez filed a motion to reconsider his Proposition 47 petition. The trial court denied his request, stating that his Proposition 47 petition had "previously been addressed and decided." The

5

trial court did not explain when or how the petition had purportedly been resolved. Chaidez [appealed] the trial court's order denying his Proposition 47 petition. (*People v. Chaidez* (Sept. 29, 2021, D078489) [nonpub. opn.].)

We reversed the denial of the petitions and remanded the matter to determine whether Chaidez was entitled to relief under section 1170.18. (D078489)

### 2. *Chaidez's Section 1170.126 Petitions*

Regarding the petitions filed under section 1170.126, we previously set forth the following procedural history:

> In 2016, Chaidez filed a petition to recall the sentence under section 1170.126, which the superior court denied as untimely. This court affirmed the denial in *People v. Chaidez* (Oct. 23, 2017, D070609) [nonpub. opn.]. [Footnote omitted.]
>
> In 2018, Chaidez filed additional petitions in the trial court seeking to explain the reasons for his delay. Without addressing the issue of delay, the trial court denied those petitions, concluding that the presence of the two first degree burglary counts rendered Chaidez ineligible for resentencing on the two nonserious felony convictions. In *People v. Chaidez* (July 19, 2019, D074872) [nonpub. opn.], we reversed the trial court's order and remanded the case to the trial court to reconsider the nonserious felony life term sentences,[5] as well as the remaining issues of undue delay and dangerousness. (See *People v. Johnson* (2015) 61 Cal.4th 674, 682 (*Johnson*) [in ruling on a Proposition 36 petition for resentencing, the trial court must engage in a count-by-count analysis and may resentence the nonserious felony convictions even though the sentences on the serious or violent felony convictions remain].) (*People v. Chaidez* (Nov. 30, 2021, D078168) [nonpub. opn.].)

On remand, the trial court concluded Chaidez failed to show good cause for the untimely filing and therefore it "declined to rule on the issue of [his] current dangerousness." We reversed the trial court's denial and "remanded for further proceedings to determine whether Chaidez is entitled to relief."

---

5    On remand, the nonserious felony convictions to be addressed were the convictions for receiving stolen property (§ 496; count 2); and unlawfully taking and driving a motor vehicle (§ 10851; count 5). These were the same convictions addressed by Chaidez's resentencing petition filed under section 1170.18.

### 3. *Chaidez's Petitions on Remand*

In January 2022, on remand from the 2021 appeals (D078489, D078168), the trial court addressed the resentencing petitions. The trial court granted relief as to count 2 by determining the stolen property was worth less than $950 and deeming the count a misdemeanor. After performing additional research to determine whether to recall counts 2 and 5 alone or the entire sentence, the court recalled the sentence as to counts 2 and 5, and imposed one year as to count 2, and eight years as to count 5, both stayed under section 654.

Then, in June 2022, the trial court vacated its "previous orders" from January 2022 "related to a partial resentencing that was never completed." Instead of determining whether Chaidez is entitled to relief under sections 1170.18 or 1170.126, the court simply dismissed counts 2 and 5. The court cited its discretion under section 1385 and left the remainder of the original sentence intact.

In doing so, the trial court explained its belief that it could either "dismiss [c]ounts 2 and 5 . . . using [its] discretion under 1385" or "start all over again and deal with the issue of dangerousness." The court sought to avoid determining whether to dismiss Chaidez's serious felony priors in a resentencing hearing:

> "And so those were—that was one of the issues that we were dealing with, but the—the nickel priors—the thing is, is that under 1385, the new 1385, under Prop 81, which is why I'm trying to make a distinction, is that if I— in order to get rid of the nickel priors, I have to recall the whole sentence. And then if I recall the whole sentence, then the whole sentence has to be redone under Prop 81."

The trial court believed the "better approach" was to "exercise [its] discretion" to dismiss counts 2 and 5:

> "But at this point, I believe that the best approach is for me to exercise my discretion under Penal Code section 1385 and dismiss Counts 2 and 5, the 10851 and the "receiving stolen property," and that's what I'm going to do."

> "And so there was no recall of any of the other—of the other two charges, meaning the burglaries, and there was no recall of the nickel priors or the

7

strike, and that leaves you back wherever it is that you want to—to pursue that, however you want to pursue it, under any of the changes in legislation, and you can start fresh without having to be dealing with all of these other issues that came up when we were dealing with Prop 36 and Prop 47."

## DISCUSSION

A.     *The Trial Court Did Not Have Discretion to Dismiss Counts 2 and 5*

According to section 1385, "The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."  (§ 1385, subd. (a); *People v. Hernandez* (2000) 22 Cal.4th 512, 521 [section 1385 authorizes a trial court "to order the dismissal of a *criminal action*"].)  However, the statute "does not allow a trial court to act after a judgment has become final."  (*People v. Chavez* (2018) 4 Cal.5th 771, 781; see also *People v. Barraza* (1994) 30 Cal.App.4th 114, 121, fn. 8 [section 1385 "has never been held to authorize dismissal of an action after the imposition of sentence and rendition of judgment"].)

Here, the trial court did not have discretion to dismiss counts 2 and 5 before ruling on Chaidez's resentencing petitions.  Indeed, we had reversed the trial court's denial of the petitions and remanded to the trial court to determine whether they were meritorious with the following directions:  "If the court grants resentencing of the nonserious felony sentences, the court is directed to allow Chaidez to seek dismissal of the serious felony prior conviction under section 1385.  If the court modifies the sentences, it is directed to amend the abstract of judgment and to forward the amended abstract to the Department of Corrections and Rehabilitation."  (*People v. Chaidez* (July 19, 2019, D074872) [nonpub. opn.].)

The trial court, however, failed to evaluate Chaidez's resentencing petitions and instead dismissed counts 2 and 5.  In doing so, it abused its discretion.  (*People v. Kim* (2012) 212 Cal.App.4th 117, 122 [ruling that the "[u]se of section 1385" to vacate "a long since final judgment of conviction" "would be inconsistent with the Supreme Court's strict focus on the language of the statute"]; see *People v. Superior Court*

8

(*Humberto S.*) (2008) 43 Cal.4th 737, 746 ["when a trial court's decision rests on an error of law, that decision is an abuse of discretion"]; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530 [reviewing the court's ruling under section 1385 "for abuse of discretion"].)  Because the trial court did not rule on any of the petitions, remand is appropriate with directions to conduct a full resentencing if the court determines Chaidez does not pose an unreasonable risk of danger to public safety.  (§§ 1170.18, subd. (c), 1170.126, subd. (f).)

        B.      *The Cause on Remand Should Be Determined by a Different Trial Judge*

Finally, "the interests of justice" require us to direct that on remand the presiding judge of the superior court shall reassign any further proceedings on Chaidez's petitions to a different trial judge.  (Code Civ. Proc., § 170.1, subd. (c) ["At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."].)  Here, the trial judge's failure to comply with our prior orders are "incompatible with a judicious effort to comply with [the sentencing scheme's] complex terms."  (*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562; accord, *People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1079.)  "An appellate court need not find actual bias in order to invoke Code of Civil Procedure section 170.1, subdivision (c)."  (*LaBlanc, supra,* at p. 1079.)  We also have inherent authority to direct that a new trial judge conduct resentencing on remand.  (See, e.g., *People v. Williams* (1986) 180 Cal.App.3d 57, 64-65 [remand to different judge because of numerous sentencing errors]; *People v. Swanson* (1983) 140 Cal.App.3d 571, 574 [remand to different judge for resentencing because original sentencing judge appeared to have arbitrarily selected sentence].)

DISPOSITION

The trial court's order dismissing counts 2 and 5 is reversed and the matter is remanded with directions that the presiding judge of the superior court reassign the cause to a new trial judge.  On remand, the new trial judge is directed to conduct proceedings consistent with our directions in this and our prior opinions and determine the merits of

Chaidez's petitions under sections 1170.18 and 1170.126.  In doing so, the trial court shall also determine whether Chaidez poses an unreasonable risk of danger to public safety and if not, then conduct a full resentencing.  We express no opinion as to the result of any such hearing.


McCONNELL, P. J.

WE CONCUR:



DO, J.



CASTILLO, J.